# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-168

**TRACY COLLINS**

**VERSUS**

**GREAT LAKES DREDGE AND DOCK CO., LLC OF LOUISIANA, ET AL.**

**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 76112-A
HONORABLE GARY J. ORTEGO, DISTRICT JUDGE

**********

**SHANNON J. GREMILLION**
**JUDGE**

**********

Court composed of Billy Howard Ezell, Shannon J. Gremillion, and D. Kent Savoie, Judges.

**AFFIRMED AS AMENDED.**

**Christopher Brent Coreil**
**Attorney at Law**
**P. O. Drawer 450**
**Ville Platte, LA 70586**
**(337) 363-5596**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Tracy Collins**

**Jonathan Clyde Vidrine**
**West & Vidrine**
**510 West Magnolia**
**Ville Platte, LA 70586**
**(337) 363-2772**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Tracy Collins**

**Chad Patrick Pitre**
**Attorney at Law**
**111 N. Court St.**
**Opelousas, LA 70570**
**(337) 942-8587**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Great Lakes Dredge and Dock Co., LLC**

**Jefferson R. Tillery**
**Hansford P. Wogan**
**Jones Walker, L.L.P.**
**201 St. Charles Ave., 48th Fl.**
**New Orleans, LA 70170**
**(504) 582-8616**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Great Lakes Dredge and Dock Co., LLC**

**GREMILLION, Judge.**

Appellant, Great Lakes Dredge and Dock Co., LLC, appeals the motion for summary judgment granted in favor of Mr. Tracy Collins in this matter brought pursuant to the Jones Act, 46 U.S.C.A. § 30104, and general maritime law. For the reasons that follow, we affirm the judgment as amended.

## FACTS AND PROCEDURAL POSTURE

*Procedural posture*

On March 30, 2016, Mr. Collins filed a petition in the Thirteenth Judicial District (the trial court), Evangeline Parish, against Great Lakes alleging that he was injured on or about May 13, 2015, while performing deckhand duties aboard the vessel known as Derrick 62. Great Lakes sought to remove the case to federal district court. The federal court remanded the matter to the Thirteenth Judicial District Court. Great Lakes then answered the suit. The district court fixed the matter for jury trial to commence on November 20, 2017. Mr. Collins then filed a motion for partial summary judgment to have Great Lakes assessed with 100% fault in the accident that allegedly caused his injuries. The trial court originally fixed the hearing on this motion for June 27, 2017. Mr. Collins then filed an amendment to his motion, to which he attached various unsworn reports regarding the accident and an unsworn report from Dr. Thomas G. Fontenot, in which he relates that Mr. Collins presented at his office complaining of neck and low back pain. Great Lakes filed an opposition in which it objected to the exhibits to Mr. Collins's amended motion. It also attached depositions of two physicians who conducted independent medical examinations of Mr. Collins and concluded that his shoulder and neck complaints were not related to the incident.

An amended pretrial order issued by the district court moved the trial date to January 8, 2018. The hearing on Mr. Collins's motion for summary judgment was

reset for December 13, 2017. The trial court entertained argument on Mr. Collins's motion and rendered judgment in his favor after striking the exhibits Mr. Collins had attached to his supplemental motion. In its written reasons, the trial court found that Mr. Collins was a Jones Act seaman injured in the course and scope of his duties and granted his motion for summary judgment "as to the issue of liability of this defendant. . . ." The written reasons also provided:

> The extent of plaintiff's injuries, along with the causal connection as to any alleged injury sustained as a result of the accident of May 13, 2015 is not an issue before this court at this time, and therefore, will not be addressed by this court pursuant to this Motion for Partial Summary Judgment.

On January 5, 2018, the trial court signed the judgment appealed, which found Great Lakes 100% at fault and liable to Mr. Collins.

### Supporting evidence

In support of his motion, Mr. Collins attached an affidavit he executed and his own deposition. In his affidavit, Mr. Collins attested that he was working on the dredge *Alaska* near Venice, Louisiana. Three other employees were attempting to connect two pipes while on a rocky jetty in the Mississippi River. There was no ring stopper on the pipe, which Mr. Collins stated was supposed to have been welded to the pipe, so the crew was forced to use a portable ring stopper. The other crew members were unable to apply a chain binder to facilitate the attachment of the ring stopper, so, according to Mr. Collins, he was asked to help. As Mr. Collins was pulling on the chain binder with "all [his] strength and weight," another crewman, Carlo, struck the top of the binder with a bar. Mr. Collins "felt something sting [him] on [his] hand," removed his glove, and noticed that his thumb was injured. He left the jetty to seek medical attention.

Mr. Collins's deposition testimony tracked his affidavit. He opined that the crew was connecting pipes that were supposed to have ring stoppers welded onto

them so they can be hoisted in order to be connected. Because Mr. Collins was the largest and strongest member of the crew, he testified that he was asked to cinch the chain binder when the others were not able to. Mr. Collins described himself as 6'6" in height and about 300 pounds. After he injured his thumb, Mr. Collins was directed to medical attention. Later that night, Mr. Collins testified, he began to experience pain in his neck and shoulders.

***Opposition evidence***

Great Lakes opposed the motion with the deposition of Relief Captain Bernie Garza, who was supervising Mr. Collins's crew at the jetty. Captain Garza testified that he, Mr. Collins, and Carlos and Mateo Salazar, brothers, were working on the jetty joining pipe. According to Captain Garza, not all pipes were fitted with welded ring stoppers. Whether one was fitted depended upon whether the pipe would be submerged beneath water. Captain Garza testified that when he originally attempted to clamp the chain binder, the chain was too tight. He loosened it by one chain link, but that proved too loose, so he attempted to tighten it one chain link tighter. Captain Garza was attempting to bind the chain when he was stopped by Mr. Collins, who, according to Captain Garza, volunteered because he was bigger and stronger. As Mr. Collins was attempting to close the binder, Carlo Salazar grabbed a bar and hit the binder a couple of times before Captain Garza stopped him. Mr. Collins grabbed his hand and began walking away. He took off his glove and revealed that his thumb had been injured. Captain Garza ordered Mr. Collins to seek medical attention.

Two physicians who conducted independent medical examinations of Mr. Collins, Dr. Gregor J. Hoffman, a New Orleans board-certified orthopedic surgeon, and Dr. Everett Gerard Robert, Jr., of Metairie, opined that Mr. Collins's neck and shoulder complaints were not related to the May 13, 2015 incident.

3

The trial court propounded extensive reasons for judgment in favor of Mr. Collins under the Jones Act. In its judgment, the trial court ruled (emphasis added):

> IT IS ORDERED, ADJUDGED AND DECREED that Plaintiff's Motion for Partial Summary Judgment is granted, as there are no genuine issues or questions of material fact as to the *liability* of the Defendant to Plaintiff which resulted in the accident which caused bodily injury to Plaintiff on May 13, 2015. The court finds that Plaintiff was in the course and scope of his employment as a Jones Act Seaman with GREAT LAKES DREDGE & DOCK COMPANY, LLC OF LOUISIANA, and therefore, GREAT LAKES DREDGE & DOCK COMPANY is *liable* to Plaintiff for any injuries caused as a result of the accident of May 13, 2015.

By order dated January 30, 2018, the trial court designated the foregoing judgment as final and appealable pursuant to La.Code Civ.P. art. 1915. This appeal ensued.

## ASSIGNMENTS OF ERROR

Great Lakes assigns the following as errors in the judgment:

1. The district court's Ruling was untimely under La. C.C.P. art. 966 which requires that "[t]he court shall render a judgment on the motion not less than twenty days prior to the trial." Here, the Court rendered its Ruling less than twenty (20) days prior to trial;

2. The district court's Ruling on GLDD's liability is legally erroneous because it makes determinations of liability without having made the requisite causation determinations;

3. The district court's Ruling on GLDD's liability is legally erroneous because it makes determinations regarding fault and causation that are improper for summary judgment and should have been decided by the fact-finder, the jury;

4. The district court's Ruling on comparative fault is legally erroneous because it is precluded from making determinations as to reasonableness and that issue was not properly presented for summary judgment; and

5. Genuine issues of fact regarding GLDD's liability and Plaintiff's comparative fault exist and/or were not adequately proven, thereby precluding granting summary judgment.

4

## ANALYSIS

On appeal, summary judgments are reviewed de novo. *Magnon v. Collins,* 98–2822 (La. 7/7/99), 739 So.2d 191. Thus, the appellate court asks the same questions the trial court asks to determine whether summary judgment is appropriate. *Id.* This inquiry seeks to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B) and (C). This means that judgment must be rendered in favor of the movant if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show a lack of factual support for an essential element of the opposing party's claim. *Id.* If the opposing party cannot produce any evidence to suggest that he will be able to meet his evidentiary burden at trial, no genuine issues of material fact exist. *Id.*

Material facts are those that determine the outcome of the legal dispute. *Soileau v. D & J Tire, Inc.,* 97–318 (La.App. 3 Cir. 10/8/97), 702 So.2d 818, *writ denied,* 97–2737 (La. 1/16/98), 706 So.2d 979. In deciding whether facts are material to an action, we look to the applicable substantive law. *Id.* Finally, summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ.P. art. 966(A)(2).

*Am. Zurich Ins. Co. v. Caterpillar, Inc.*, 12-270, p. 4-5 (La.App. 3 Cir. 10/3/12), 99 So.3d 739, 742-43.

Louisiana Code of Civil Procedure article 966(C)(1)(a) provides, "A contradictory hearing on the motion for summary judgment shall be set not less than thirty days after the filing and not less than thirty days prior to the trial date." Article 966(C)(3) provides, "The court shall render a judgment on the motion not less than twenty days prior to the trial." In the present matter, the trial date was January 8, 2018. The argument on the motion was held on December 13, 2017. The trial court issued its written reasons for judgment on December 21, 2017, and judgment was rendered on January 5, 2018.

Prior to 2015, the timing of motions for summary judgment was governed by La.Code Civ.P. art. 966(D), which required that the trial court render summary judgment at least ten days before trial. Great Lakes cites us to the fourth circuit's analysis of former Article 966(D) found in *Environmental Operators, L.L.C. v.*

*Natco, Inc.*, 08-1183 (La.App. 4 Cir. 3/18/09), 7 So.3d 1232 (the *EO* case), in which the plaintiff was granted summary judgment the day before trial. On appeal, the fourth circuit examined many other cases in which the ten-day deadline was an issue. The court concluded, "The constraint imposed by La.Code Civ. Proc. Art. 966(D) is mandatory, rather than permissive. For this legal error alone, the district court judgment granting the motion for summary judgment is vacated, and the matter is remanded to the district court for reconsideration." *Id.*, at 1237.

As the court noted in the *EO* case, legal errors occur when the "trial court applies incorrect principles of law and such errors are prejudicial. . . Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights." *Id.* (quoting *Lam ex rel. Lam v. State Farm Mut. Auto. Ins. Co.*, 03-180, p. 4 (La.App. 4 Cir. 4/1/05), 901 So.2d 559, 564.

A panel of this court, in *Finley v. Christus St. Francis Cabrini Hosp.*, 12-149 (La.App. 3 Cir. 7/25/12), 96 So.3d 707, *writ denied*, 12-1932 (La. 11/9/12), 100 So.3d 843, took judicial notice of the impropriety of a summary judgment granted eight days before trial. We cited with approval the *EO* case, but found that, because the appellants had not raised the matter in brief, this "reversible error" would not be addressed. *Finley*, 96 So.3d at 709.

In *Loconte Partners, LLC v. Montgomery and Assoc., Inc.*, 12-691 (La.App. 4 Cir. 5/15/13), 116 So.3d 904, the fourth circuit declined to interpret the *EO* case as requiring reversal absent evidence of prejudice to the non-mover. In that case, the court noted that the purpose of the ten-day deadline is to prevent unnecessary trial preparation.[1] Because the non-mover had failed to oppose the motion and stated on the record in open court that it had no evidence to oppose the motion, the fourth

---

[1] Citing *Bell v. Uniroyal, Inc.*, 96-2838 (La.App. 4 Cir. 6/11/97), 696 So.2d 268.

circuit found that the non-mover was not prejudiced by the violation of the ten-day rule.

Since the *Loconte Partners* case, the legislature has significantly amended La.Code Civ.P. art. 966, including amending the deadline for filing, serving, opposing, and rendering judgments on motions for summary judgment. 2015 La.Acts No. 422. Now, a trial court may not render judgment less than twenty days before trial. La.Code Civ.P. art. 966(C)(3). The official comments to Article 966 provide, "(h) Subparagraph (C)(3), which is new, changes the law. This time period requires the court to decide a motion for summary judgment sufficiently in advance of trial to allow a party to apply for supervisory writs without interrupting the trial setting."

In the context of the present matter, the trial court designated this judgment as final and appealable; there was no need for Great Lakes to seek supervisory writs. It was granted a suspensive appeal. The late grant of summary judgment did not deprive Great Lakes of a substantive right and does not constitute reversable error.

The remainder of Great Lakes' assignments of error substantively complain of the grant of summary judgment. Primarily, Great Lakes complains that the trial court's judgment made "determinations of liability without having made the requisite causation determinations."

As our colleagues on the first circuit have noted:

> The Jones Act, 46 U.S.C.A.App. § 688, provides a cause of action against a maritime employer based on negligence when a seaman is injured in the course and scope of his employment. The Jones Act contains a liberal causation requirement that entitles a seaman to recover if negligence chargeable to the employer played *any* part in producing the injury. An employer's negligence may arise from a dangerous condition on or about the vessel, failure to use reasonable care to provide a seaman with a safe place to work, failure to inspect the vessel for hazards, and any other breach of the employer's duty of care. Under the Jones Act, both the employer and the seaman are obligated to act with ordinary prudence under the circumstances.

7

In contrast, liability under the doctrine of unseaworthiness does not rest upon fault or negligence. The owner's duty to furnish a seaworthy ship is absolute and completely independent of the duty under the Jones Act to exercise reasonable care. To be seaworthy, a vessel and its appurtenances must be reasonably suited for the use for which they were intended. A more stringent standard of causation is required to prevail on an unseaworthiness claim than on a Jones Act claim. Specifically, a plaintiff must prove that the unseaworthy condition played a substantial part in bringing about the injury and that the injury was either the direct result or a reasonably probable consequence of the unseaworthiness.

Although negligence and unseaworthiness are totally separate concepts, the same factual basis has been used to assert both theories of recovery.

*Dorsey v. J. Ray McDermott, Inc.*, 03-2264, pp. 7-8 (La.App. 1 Cir. 6/25/04), 886 So. 2d 482, 487–88(citations omitted).

Whether one is a "seaman" for Jones Act purposes is a mixed question of law and fact. *Harbor Tug and Barge Co. v. Papai,* 520 U.S. 548, 117 S.Ct. 1535 (1997). The United States Supreme Court established, in *Chandris, Inc. v. Latsis*, 515 U.S. 347, 115 S.Ct. 2172 (1995), a two-pronged test for determining whether a claimant enjoys the status as a seaman: First, the employee's duties must further the vessel's function or the accomplishment of its mission. Second, "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Id.* at 368.

In the present matter, we find that reasonable minds could not disagree that Mr. Collins was a seaman. He was assigned to the *Alaska* as a deckhand at the time of his injury. Even after his injury, Mr. Collins was told by Captain Garza that he could return to work, if not on the *Alaska*, on another dredge owned by Great Lakes. The purpose of the *Alaska* was dredging, and Mr. Collins was connecting pipe that would transport dredged material at the time he was allegedly injured. The facts fairly parallel *O'Donnell v. Great Lakes Dredge & Dock Co.*, 318 U.S. 36, 63 S.Ct.

488 (1943), in which a deckhand, who was injured while onshore assisting in the repair of a land pipe, was found to have been a seaman.

Great Lakes correctly notes that liability in Jones Act claims is only established upon proof that the defendant owed the plaintiff a duty, that it breached that duty, and that the breach was the legal cause of the plaintiff's injuries. This would necessitate a determination that Mr. Collins's injuries were caused by the accident, and the trial court specifically stated in its reasons that it was not making such a determination. Nevertheless, the judgment found in favor of Mr. Collins on the issue of liability.

There clearly exists a genuine issue of material fact regarding whether Mr. Collins's neck and shoulder complaints are in any way related to smashing his thumb while attempting to buckle the chain binding. In fact, Mr. Collins's motion did not seek to establish a causal relationship. Great Lakes' opposition included medical opinion that calls into question the causal relationship between the incident and any complaints Mr. Collins may have beyond the obvious injury to his thumb. The trial court did err in finding in Mr. Collins's favor on the issue of liability.

The testimonies of Mr. Collins and Captain Garza confirm that the chain binder and other equipment provided by Great Lakes was inadequate for the job at hand. The chain was improperly sized to perform the task. Because of his superior size, Mr. Collins was called upon or volunteered—a distinction we find irrelevant, as Mr. Collins was part of the work crew assigned to join the pipe—to assist in locking the chain binder. Later, after Mr. Collins was sent to get his thumb cared for, the marsh buggy arrived and facilitated the joinder of the pipe with no further difficulty. Appropriate and adequate equipment was available, and the decision to proceed with the operation without them was negligent. Conversely, nothing in the submissions supporting or opposing the motion for summary judgment hints at any

improper or substandard conduct on Mr. Collins's part. He struggled to lock the chain binder, a task integral to the joinder of the dredge pipes, which was the reason he was on the jetty.

Accordingly, we affirm the judgment of the trial court, but amend the judgment to find that Appellant, Great Lakes Dredge and Dock Co., LLC, is 100% at fault in the accident of May 13, 2015. All other issues, including causation, are reserved for trial on the merits. Costs of this appeal are taxed to Appellant, Great Lakes Dredge and Dock Co., LLC.

**AFFIRMED AS AMENDED.**